UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DR. GERALD R. FINKEL, *as Chairman of the* :
*Joint Industry Board of the Electrical Industry*, :
  :
                               Petitioner, :
  :
            -against- : **MEMORANDUM & ORDER**
  : **22-cv-7225(DLI)(JRC)**
SAMCO ELECTRIC CORP. a/k/a SAMCO :
ELECTRICAL CORPORATION, :
  :
                               Respondent. :
------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

On November 29, 2022, Dr. Gerald R. Finkel, as Chairman of the Joint Industry Board of the Electrical Industry ("Petitioner"), filed a petition to confirm and enforce an arbitrator's award (the "Award") rendered on October 24, 2022 against Samco Electric Corp. a/k/a Samco Electrical Corporation ("Respondent"). *See*, Pet., Dkt. Entry No. 1. The Award was rendered pursuant to a collective bargaining agreement ("CBA") between Local Union #3 of the International Brotherhood of Electrical Workers (the "Union") and Respondent. *Id*. at ¶ 1. To date, Respondent has not responded to Finkel's confirmation action, sought to challenge the Award, or appeared in this action. For the reasons set forth below, the unopposed petition to confirm the Award and the related request for attorneys' fees and costs incurred in bringing this action are granted.

## BACKGROUND

**I.    The Plans & Collective Bargaining Agreement**

Petitioner serves as Chair of the Joint Industry Board of the Electrical Industry ("JIB"), which is the administrator of various employee benefit multi-employer plans established and maintained pursuant to collective bargaining agreements between the Union and certain employer associations and independent or unaffiliated employers in the electrical and other related

industries. *Id*. at ¶ 4. The JIB is the administrator and fiduciary under the Employee Retirement Income Security Act of 1974 ("ERISA") of each of the following employee benefit plans: the Pension, Hospitalization and Benefit Plan of the Electrical Industry, the Dental Benefit Fund of the Electrical Industry, the Educational and Cultural Trust Fund of the Electrical Industry, the Annuity Plan of the Electrical Industry, and the Health Reimbursement Account Plan of the Electrical Industry, the Deferred Salary Plan of the Electrical Industry (the "DSP"), the Joint Apprenticeship and Training Program, and the National Electrical Benefit Plan ("NEBF") (collectively the "ERISA Plans"). *Id*. The ERISA Plans are administered jointly by a board of trustees comprised of labor and management representatives who share equal representation in the administration of the Plans in accordance with the Labor Management Relations Act of 1947. *Id*. at ¶ 7.

Pursuant to the CBA, the JIB receives directly from each signatory employer a weekly remittance consisting of contributions to each of the ERISA Plans, except the DSP, as well as a Union assessment collected by the signatory employer from each Union member employed. *Id*. at ¶ 6. The CBA also permits the JIB to collect employee loan payments due to the Union and certain plans, and contributions to fund the operations of the JIB (collectively, the "Non-ERISA Plans"). *Id*. at ¶ 9. Additionally, the CBA requires employers to remit employer and employee contributions to the DSP ("DSP Contributions") to the care of Empower Retirement ("Empower"), the third-party record keeper and investment manager retained by the JIB. *Id*. at ¶ 8.

Respondent is a member of the New York Electrical Contractors Association ("Association"). *Id*. ¶¶ 14. As a member of the Association, Respondent agreed to be bound to the CBA between the Association, the Association of Electrical Contractors, Inc., and the Union for work performed within the five boroughs of New York City from April 10, 2019 through April

13, 2022. *Id*. at ¶ 14; *See also*, CBA, Dkt. Entry No. 1-1.

The CBA required Respondent to make certain contributions to the ERISA Plans, the Non-ERISA Plans, and to the Union for all work within the trade and geographical jurisdiction of the Union and to submit weekly payroll reports that provide the name, gross wages, and hours worked for each worker employed by the company on whose behalf the required contributions are made. Pet. at ¶ 14. The CBA also provides that an employer "shall be liable for the remedies under Section 502(g)(2) of ERISA, including liquidated damages in an amount not in excess of 20%, in the event of entry of judgment against the Employer in an action to collect delinquent contributions."[1] *Id*. at ¶ 17; CBA, Article II, Section 12(a). The CBA further provides that Respondent agrees to "be bound by[] the provisions of the Plan and Trust documents and all amendments thereto . . . including but not limited to, the Policy for the Collection of Delinquent Contributions[.]" Pet. at ¶ 18; CBA, Article II, Section 12(a). The Policy for the Collection of Delinquent Contribution ("Collection Policy") provides that an employer, like Respondent, shall be liable for: (1) liquidated damages and attorneys' fees and costs if legal action is commenced; and (2) interest on delinquent contributions is to be calculated at the rate set forth in Section 6621 of the Internal Revenue Code, except for contributions to the NEBF, which calculates interest at a rate of 10%. Pet. at ¶ 20.

**II.     Arbitration**

The JIB established Arbitration Procedures, which were incorporated by reference into the CBA. Pet. at ¶ 19; *See, generally*, CBA; Arbitration Procedures, Dkt. Entry No. 1-3. The Arbitration Procedures provide that the arbitrators have jurisdiction to determine any dispute between JIB and Employer that "relate[] to the Employer's obligation to contribute to" the Plans, "including but not limited to Audits, Delinquencies, interest, liquidated damages, and attorneys'

---

[1] Remedies under Section 502(g)(2) of ERISA also include interest on the unpaid contributions and reasonable attorneys' fees and costs of the action. *See*, 29 U.S.C. § 1132(g).

fees and costs…" Pet. at ¶ 22; Arbitration Procedures at Article II.E.1.

Here, Petitioner contends that Respondent: (1) failed to remit contributions for the week ending July 6, 2022 through September 28, 2022; (2) underpaid the amount of contributions owed for the weeks ending January 26, 2022, February 9, 2022, and February 23, 2022; and (3) submitted a check for the week ending May 25, 2022, which ultimately was returned for insufficient funds. Pet. at ¶ 24. Pursuant to the Collection Policy and Arbitration Procedures, Petitioner initiated arbitration before the designated arbitrator, provided Respondent with notice of the arbitration, and served Respondent with Petitioner's prehearing memorandum of law. *Id*. ¶¶ 25-26. The arbitration hearing was held on September 16, 2022 and, notably, Respondent and its attorney appeared at the hearing and did not contest the validity of the documents introduced into evidence or the calculation of amounts owed. *Id*. ¶¶ 27-29.

After hearing Petitioner's evidence, the arbitrator found that Respondent had violated the CBA and ordered Respondent to pay the sum of $233,715, which consisted of: (1) JIB contributions for payroll weeks ending July 6, 2022 through September 28, 2022 totaling $122,814.82, plus interest of $1,172.01;[2] (2) DSP contributions for payroll weeks ending July 6, 2022 through September 28, 2022 totaling $36,021.66, plus interest of $447.88; (3) additional interest on JIB contributions of $2,048.02; (4) shortage on JIB contributions for payroll weeks ending January 26, 2022, February 9, 2022, and February 23, 2022 totaling $1,080; (5) JIB contributions of $13,155.79, representing the dishonored check submitted for payroll week ending May 25, 2022; (6) liquidated damages of $51,074.82; and (7) legal, administrative, and arbitrator fees of $3,650. *Id*. ¶ 32; Arb. Award at 5-6.

---

[2] While the arbitration award states that the period for which JIB contributions are owed is November 17, 2021 through May 22, 2022, it is clear that this was a typographical error and the contributions are owed for July 6, 2022 through September 28, 2022. *See*, Arb. Award, Dkt. Entry No. 1-7 at 4-5; *See also*, Summary Sheet, Dkt. Enty No. 1-6.

4

To date, Respondent has failed to abide by the Award, and the Award has not been vacated or modified and no other application for such relief is pending currently. Pet. at ¶¶ 34-35. The Petition is timely because it was filed within the one-year statute of limitations applicable to a petition to confirm an arbitrator's award. *Id*. at ¶ 36. *See also, Finkel v. JCF Elec., Inc.*, 2022 WL 3682834, at *2 (E.D.N.Y. Aug. 25, 2022).

## DISCUSSION

### I.   Confirmation the Arbitration Award

Courts in this Circuit "treat an unanswered petition to confirm an arbitration proceeding as an unopposed motion for summary judgment, [because] a petition to confirm an arbitration award is typically accompanied by a record." *Trs. of Empire State Carpenters Annuity v. J. Careri Constr. Co.*, 2016 WL 492145, at *1 n.1 (E.D.N.Y. Jan. 5, 2016) (internal quotation marks omitted) (citing *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109-110 (2d Cir. 2006)), *report and recommendation adopted* 2016 WL 520992 (E.D.N.Y. Feb. 8, 2016). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Accordingly, the Petition is converted to a motion for summary judgment.

"Normally, confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *D.H. Blair*, 462 F.3d at 110 (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)). This is because the Second Circuit has "repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138, 139 (2d Cir. 2007) (explaining that courts in this Circuit "use[ ] an extremely deferential standard of review for

5

arbitral awards"). Accordingly, courts in this Circuit will vacate an arbitration award "only upon finding a violation of one of the four statutory bases [enumerated in the Federal Arbitration Act], or, more rarely, if [the court] find[s] a panel has acted in manifest disregard of the law." *Porzig*, 497 F.3d at 139, fn 3 (explaining that the FAA's grounds generally involve impropriety on the part of the arbitrators) (citing 9 U.S.C. § 10(a)).

Here, Petitioner presents an unopposed petition to confirm the arbitration award and has provided uncontroverted materials that demonstrate an absence of a genuine material issue of fact for trial. Notably, the record shows that the arbitrator had more than a reasonable basis for his conclusion that Respondent failed to remit the proper contributions during the specified time periods. *See*, Award, Dkt. Entry No. 1-7 at 4-6; *See also*, Summary Sheets. The record also makes clear that the arbitrator acted within the scope of her authority, had an adequate basis for the award, and acted in accordance with the CBA, Collection Policy, and Arbitration Procedures.

The Court finds no reason to vacate the arbitration award based upon the one of the four statutory bases enumerated in the Federal Arbitration Act, nor does it find that the arbitrator acted in manifest disregard of the law. Accordingly, Petitioner's petition is granted, and the arbitration award of $233,715 is confirmed because there is more than a "barely colorable justification" for the award in this case and the arbitrator acted in accordance with the CBA, Collection Policy, and Arbitration Procedures. *See*, *e.g*, *Finkel v. Mech. Elec. Corp.*, 2022 WL 17740190, at *1 (E.D.N.Y. Dec. 16, 2022); *Finkel*, 2022 WL 3682834, at *3.

## II.     Interest on Arbitration Award

Petitioner also requests that the Court award interest. "When interest accrues during the pendency of the action and it is explicitly requested in the complaint, such interest will be awarded." *See*, *Finkel*, 2022 WL 3682834, at *3. Accordingly, Petitioner is awarded accumulated interest from October 24, 2022, the date of the arbitration award, through the date of judgment.

6

Pursuant to the Collection Policy, interest on the delinquent contributions shall be calculated at the rate set forth in Section 6621 of the Internal Revenue Code for all ERISA Plans, except the NEBF which has adopted a 10% interest rate. Pet. at ¶ 20.

Petitioner additionally requests post-judgment interest under 28 U.S.C. § 1961, which provides that interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." 28 U.S.C. § 1961(a). Petitioner is awarded post-judgment interest in accord with 28 U.S.C. § 1961.

### III. Attorneys' Fees & Costs

Petitioner seeks attorneys' fees in the amount of $490 for 3.4 hours of attorney services and costs in the amount of $477 to recover the court filing fees and service charges. Pet. at ¶¶ 42-43; *See also*, History of Billing, Dkt. Entry No. 1-8. Petitioner is entitled to reasonable attorneys' fees and costs both under ERISA and the CBA, which incorporates the remedies available pursuant to Section 502(g) of ERISA. *See*, 29 U.S.C. § 1132(g). Accordingly, Petitioner is entitled to $490 in attorneys' fees and $477 in costs.

### CONCLUSION

For the foregoing reasons, the Petition is granted and the arbitration award rendered on October 24, 2022 is confirmed. Accordingly, Petitioner is awarded: (1) $233,715, plus accumulated interest on the unpaid contributions from October 24, 2022 through the date of judgment calculated at the rate set forth in § 6621 of the Internal Revenue Code for all ERISA Plans, except the NEBF which has adopted a 10% interest rate; (2) post-judgment interest from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the

calendar week preceding the date of the judgment pursuant to 28 U.S.C. § 1961(a); and (3) $490 in attorneys' fees and $477 in costs.  The Clerk of the Court is directed to enter judgment in favor of Petitioner accordingly.

SO ORDERED.

Dated:  Brooklyn, New York
       September 22, 2023

/s/
DORA L. IRIZARRY
United States District Judge
